# Commonwealth v. Perini

C.P. of Monroe County, No. 1174 CR 2011.

*Chad Martinez,* for Commonwealth.
*Brandon R. Reish,* for defendant.

HARLACHER SIBUM, *J.,* January 5, 2012— Defendant was arrested for driving under the influence of alcohol in connection with events that allegedly occurred on April 16, 2011. Defendant waived her right to a preliminary hearing. The commonwealth filed a criminal information on August 16, 2011, charging defendant with two counts of Driving Under the Influence of Alcohol, 75 Pa.C.S. §§3802(a)(1) and (c). Defendant filed an omnibus pretrial motion on September 27, 2011, including a motion to suppress and a motion for habeas corpus relief. A hearing was held on November 14, 2011. We are now prepared to decide this matter.

The relevant facts as presented at the omnibus hearing and through the affidavit of probable cause are as follows. On April 16, 2011, Officer Brandon Bingler ("Officer") of the Stroud Area Regional Police Department ("SARPD") was traveling eastbound in a marked patrol car, patrolling the 800 block of Main Street, Stroudsburg. Officer observed a vehicle traveling in the opposite direction at a high rate of speed. Officer estimated from his training and experience in the SARPD traffic unit that the vehicle was traveling at 40 miles per hour in a 25 mile per hour zone. Officer then turned his vehicle around

to initiate a traffic stop. Meanwhile, he observed the vehicle initiate a right hand turn onto 9th Street, headed northbound. Officer located the vehicle parked in a rear parking lot of a Subway restaurant located on 9th Street in a non-residential, vacant area. The vehicle was turned off and defendant was sitting in the driver's side of the vehicle. The vehicle was parked in a poorly lighted area of the parking lot shared by Subway and a laundromat which were both closed at the time.

Officer pulled into the parking lot and parked his patrol car between the vehicle and the Subway's entrance/exit to 9th Street. Officer stated in his affidavit of probable cause that he activated his vehicle's overhead lights and initiated a traffic stop of defendant's vehicle in the Subway's rear parking lot. Conversely, Officer testified at the omnibus hearing that he activated the patrol lights on his vehicle upon pulling into the parking lot for both officer safety and because the area was not well lit. Officer approached the driver's side of the vehicle and asked the operator for her driver's license, registration and insurance documents. The operator was identified as defendant. Defendant told Officer she was waiting for a friend. Officer detected a strong odor of alcohol emanating from defendant's vehicle and that defendant's eyes appeared bloodshot and glassy. Officer then questioned defendant if she had been drinking. Defendant replied that it was her birthday. She appeared very excited and upset and began crying hysterically.

Officer requested defendant exit the vehicle and to perform Standardized Field Sobriety Tests. Officer first administered the Horizontal Gaze Nystagmus Test by

instructing defendant not to move her head and follow the tip of officer's pen with only her eyes. Defendant failed the test for "lack of smooth pursuit" and "jerking of the eye at maximum." Officer then demonstrated the Walk and Turn Test which defendant attempted but could not perform satisfactorily. Officer finally demonstrated the One-Leg Stand Test which defendant attempted and could perform satisfactorily. Officer then requested defendant to submit to a Preliminary Breath Test ("PBT") and she agreed. The PBT indicated a reading of 0.114%. Defendant was then placed in custody. Throughout Officer's interactions with defendant, no one ever showed up to meet defendant as she had contended.

Defendant was then transported to the Monroe County DUI Processing Center. Prior to requesting a blood sample, officer read defendant the implied consent law, and defendant stated she understood and was willing to submit to the blood test. Laboratory results of defendant's blood test indicated a blood alcohol concentration of 0.18%.

## DISCUSSION

Defendant filed an omnibus pretrial motion raising (1) a motion to suppress the vehicle stop and all evidence arising therefrom, and (2) a motion for habeas corpus relief. We will address defendant's issues in turn.

### Motion to suppress

The Pennsylvania Rules of Criminal Procedure provide that a defendant may move to suppress any evidence alleged to have been obtained in violation

of the defendant's rights. Pa.R.Crim.P. §581(A). The commonwealth carries the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained illegally. Pa.R.Crim.P. §581(H). The commonwealth must meet its burden by a preponderance of the evidence. *Commonwealth v. Ruey*, 586 Pa. 230, 240, 892 A.2d 802, 807 (Pa. 2006). The trial court, when deciding a motion to suppress, is required to conduct a hearing and make findings of fact and conclusions of law determining whether evidence was obtained in violation of a defendant's rights. *Commonwealth v. Graham*, 554 Pa. 472, 721 A.2d 1075, 1077 (1998). "[I]t is the sole province of the suppression court to weigh the credibility of the witnesses." *Commonwealth v. Shine*, 784 A.2d 167, 168 (Pa. Super. 2001). As such, the court is entitled to believe all, part or none of the evidence presented. *Id.*

Defendant contends that Officer conducted a stop of defendant's vehicle for traveling at a high rate of speed, thus violating the motor vehicle code. Defense counsel cites *Commonwealth v. Chase* for the proposition that in order to justify a vehicle stop, an officer must have either reasonable suspicion of a motor vehicle violation that must be investigated or probable cause of a completed violation of the motor vehicle code. See *Commonwealth v. Chase*, 599 Pa. 80, 960 A.2d 108 (2008). Defendant argues that Officer conducted a stop of defendant's vehicle on the basis of a completed motor vehicle violation, speeding, and that it was a non-investigative stop which would trigger the standard of "probable cause," which Officer did not have to effectuate a valid stop of defendant's vehicle.

The commonwealth, on the other hand, argues that

Officer did not effectuate a traffic stop of defendant's vehicle for a motor vehicle violation but rather engaged in a mere encounter with defendant while her vehicle was parked in a vacant and poorly lit parking lot. Therefore, the commonwealth contends that no amount of suspicion was required for Officer to engage in a mere encounter or request for information with defendant. Our initial inquiry must begin with what quantum of cause, reasonable suspicion or probable cause, Officer needed to stop defendant's vehicle for speeding, and whether Officer possessed such grounds.

Police officers are vested with the authority to stop vehicles whenever they have reasonable suspicion that a violation of the motor vehicle code is occurring or has occurred. 75 Pa.C.S. §6308(b). This statute provides as follows:

> (b) Authority of police officer. - Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has *reasonable suspicion that a violation of this title is occurring or has occurred,* he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. §6308(b) (emphasis added)[1]. "Thus, when an

---

1. Section 6308(b) was amended on February 1, 2004, changing the standard from "articulable and reasonable grounds," which is tantamount

officer has reasonable suspicion a violation of the vehicle code is occurring or has occurred, he may interrupt the privileged operation of a vehicle on the public highways and stop the vehicle for investigative purposes stated therein." *Chase*, 960 A.2d at 112. "Incident to this stop, an officer may check the vehicle's registration, the driver's license and obtain any information necessary to enforce provisions of the motor vehicle code." *Commonwealth v. Mack*, 953 A.2d 587, 590 (Pa. Super. 2008).

Our Superior Court in *Commonwealth v. Chase* extensively evaluated the constitutionality of Section 6308(b) and distinguished when an officer must have reasonable suspicion or probable cause to effectuate a valid traffic stop for violation of the motor vehicle code. Our Superior Court held as follows:

> The issue before us is whether the legislature could determine the quantum of cause an officer needs to stop a vehicle for an alleged violation of the vehicle code. This being a question of law, our scope of review is plenary and our standard of review is de novo.
>
> The Fourth Amendment to the United States Constitution protects the people from unreasonable searches and seizures. A vehicle stop constitutes a seizure under the Fourth Amendment. The key question in determining if a seizure is constitutional under the fourth amendment

---

to probable cause, *Commonwealth v. Whitmyer*, 542 Pa. 545, 550, 668 A.2d 1113, 1116 (Pa. 1995), to the less stringent "reasonable suspicion," but the officer must have more than a hunch as the basis of the stop. *Commonwealth v. Korenkiewicz*, 743 A.2d 958, 963 (Pa. Super. 1999), appeal denied, 759 A.2d 383 (Pa. 2000); *Commonwealth v. Wright*, 672 A.2d 826, 830 (Pa. Super. 1996).

is if it is reasonable.

A warrantless seizure is presumptively unreasonable under the Fourth Amendment, subject to a few specifically established, well-delineated exceptions. One exception allows police to briefly detain individuals for an investigation, maintain the status quo, and if appropriate, conduct a frisk for weapons when there is reasonable suspicion that criminal activity is afoot. The Fourth Amendment does not prevent police from stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if it is a minor offense.

Nevertheless, appellee argues the Fourth Amendment requires probable cause, relying on *Whren*[2], which stated, "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." However, this language only confirms that when police possess the higher quantum of evidence, probable cause, they may conduct a vehicle stop; the court did not state probable cause is required to stop.

Extensive case law supports the conclusion a vehicle stop for DUI may be based on reasonable suspicion, as a post-stop investigation is normally feasible. However, a vehicle stop based solely on offenses not "investigatable" cannot be justified by a mere reasonable suspicion, because the purposes of a *Terry*[3]

---

2. *Whren v. United States*, 517 U.S. 806, 809-10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

3. *Terry v. Ohio*, 392 U.S. 1. 88 S.Ct. 1868 (U.S. Ohio 1968).

stop do not exist—maintaining the status quo while investigating is inapplicable where there is nothing further to investigate. An officer must have probable cause to make a constitutional vehicle stop for such offenses.

Indeed, the language of §6308 reflects this very intent. Stops based on reasonable suspicion are allowed for a stated investigatory purpose: "to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title." This is conceptually equivalent to the purpose of a *Terry* stop. It does not allow all stops to be based on the lower quantum -- it merely allows this for investigatory stops, consistent with the requirements of both federal and state constitutions. We interpret the legislature's modification of §6308 as merely eliminating the statutory requirement of a greater level of information for a stop under the vehicle code than is constitutionally required for all other stops. As such, it is not unconstitutional.

*Chase*, 960 A.2d at 112, 113, 116 (internal citations and footnotes omitted.)

Based upon the language of *Chase,* Officer must have had either reasonable suspicion of a motor vehicle violation that required investigation or probable cause of a completed violation of the motor vehicle code, In *Commonwealth v. Whitmyer*, 542 Pa. 545, 668 A.2d 1113 (1995), superseded by statute on other grounds,[4] a case

---

4. *Whitmyer* was superseded by statute after the Legislature amended 75 Pa.C.S. §6308(b). As such, *Whitmyer,* as it relates to former Section

where police utilized the patrol vehicle's speedometer for two-tenths of a mile and estimated appellee's speed at seventy miles per hour, our Supreme Court held:

> We note that this is not a case where further investigation would lead to a discovery of a violation of the vehicle code. If the trooper was unable to clock Appellee for three-tenths of a mile or observe the conditions that would warrant a citation for driving at an unsafe speed, there is no further evidence that could be obtained from a subsequent stop and investigation.

*Whitmyer*, 668 A.2d at 1118. Similarly, in *Commonwealth v. Sands*, 887 A.2d 261 (Pa. Super. 2005), a case which distinguished a vehicle stop for suspected DUI, noting that such a stop was "a scenario where further investigation almost invariably leads to the most incriminating type of evidence, i.e., strong odor of alcohol, slurred speech, and blood shot eyes"...which "can only be obtained by a stop and investigation," our Superior Court recently followed similar logic:

> [I]t is hard to imagine that an officer following a vehicle whose driver is suspected of driving at an unsafe speed would discover anything further from a stop and investigation. Similarly, if an officer who observes a driver run a red light or drive the wrong way on a one-way street, the officer either does or does not have probable cause to believe there has been a violation of the vehicle code. A subsequent stop of the vehicle is not likely to yield any more evidence to aid in the officer's

---

6308(b), is no longer controlling precedent, as explained above.

determination.

*Sands*, 887 A.2d at 270. The *Chase* court affirmed this logic and held "[i]f *Terry* allows an investigatory stop based on reasonable suspicion, there must be something to investigate." *Chase*, 960 A.2d at 115. Therefore, [w]hen the existence of reasonable suspicion combines with the expectation that the stop will allow light to be shed on the relevant matters, the stop is not unconstitutional." *Id.*

In our case, Officer observed defendant's vehicle traveling in the opposite direction at a high rate of speed and estimated from his training and experience that the vehicle was traveling 40mph in a 25mph zone. Officer testified that he turned his vehicle around to initiate a traffic stop but that the car had turned off the main road onto North 9th Street. Officer later located defendant's vehicle parked in a parking lot with the engine off. Officer testified that he pulled into the parking lot and activated his patrol lights in order to illuminate the area and for officer safety, however, in his affidavit, he acknowledged that he effectuated a traffic stop. Officer then approached defendant to speak with her and immediately requested her driver's license, registration and insurance. Officer did not cite defendant for speeding nor did he question her about how fast she was traveling.

Based upon these facts of record, and Officer having acknowledged that he effectuated a traffic stop in his Affidavit of Probable Cause, the commonwealth has not presented sufficient facts to illustrate that Officer had probable cause to stop defendant for speeding. Had Officer testified that he suspected DUI and the basis thereof, or

that he had pulled her over for a violation of the motor vehicle code which required investigation to corroborate, his stop of defendant's vehicle may have been valid under a reasonable suspicion standard.

However, Officer having only suspected defendant of speeding, and having no way to validate that she was truly speeding except through Officer's estimation that she was traveling 40mph in a 25mph zone, Officer did not satisfy the probable cause standard.

Having determined that Officer did not effectuate a valid stop of defendant's vehicle for lack of probable cause under *Chase*, we must determine whether Officer's interaction with defendant amounted to a mere encounter requiring no level of suspicion to interact, or an investigative detention which must have been supported by reasonable suspicion.

In Pennsylvania, courts recognize three categories of police officer and citizen interaction:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of arrest. Finally, an arrest or custodial detention must be supported by probable cause. An investigative detention constitutes a seizure of the person and must be supported by reasonable suspicion that those detained are engaged in criminal

activity.

*Commonwealth v. Carter*, 779 A.2d 591, 593 (Pa. Super. 2001). "No constitutional provision prohibits police officers from approaching a citizen in public to make inquiries of them." *Commonwealth v. Cauley*, 10 A.3d 321, 325 (Pa. Super. 2010). "However, if the police action becomes too intrusive, a mere encounter may escalate into an investigatory [detention] or seizure." *Id.* Our Superior Court has differentiated between a mere encounter and an investigatory detention as follows:

> The term mere encounter refers to certain non-coercive interactions with the police that do not rise to the level of a seizure of the person under the Fourth Amendment. For example, a mere encounter transpires when an officer approaches a citizen on a public street for the purpose of making inquiries.

> In contrast, an investigative detention occurs when a police officer temporarily detains an individual by means of physical force or a show of authority for investigative purposes. In other words, in view of all the circumstances, if a reasonable person would have believed that he was not free to leave, then the interaction constitutes an investigatory detention. An investigatory detention triggers the constitutional protection of the Fourth Amendment to the United States Constitution, Article I, Section 8 of the Pennsylvania Constitution, and the prerequisites for such a detention as set forth in *Terry [v. Ohio]*.

*Id.* at 325-26 (internal citations omitted). To initiate an

investigative detention, the officer must have at least reasonable suspicion that criminal activity is afoot. *Commonwealth v. Stevens*, 832 A.2d 1123, 1127 (Pa. Super. 2003); *Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa. Super. 2005).

Here, Officer pulled into the Subway parking lot and parked his patrol car between defendant's vehicle and the entrance/exit leading to 9th Street. Officer activated his overhead lights to illuminate the area and for the safety of both the Officer and defendant. Officer then approached defendant's vehicle and requested her driver's license, registration and proof of insurance. Defendant informed Officer that she was waiting for a friend. It was not until after Officer smelled alcohol on defendant and observed her eyes to be bloodshot and glassy did he ask her if she had been drinking that evening. Based upon the above cited case law, and looking at the totality of the circumstances in this case, especially when officer had taken possession of defendant's license, registration, and insurance cards, a reasonable person would not have believed that he or she was free to leave, and therefore, the interaction constitutes an investigatory detention requiring at least reasonable suspicion that criminal activity was afoot.

Often during traffic stops, officers "observe facts that lead them to a reasonable suspicion that some alternate criminal activity is afoot, and therefore, the officers prolong their encounter with the driver although the purpose of the initial traffic stop has been achieved." *Commonwealth v. Dales*, 820 A.2d 807, 812 (Pa. Super. 2003). Although Officer testified that upon speaking with defendant he smelled a strong odor of alcohol emanating

from her vehicle and observed her to have bloodshot, glassy eyes, he did not have probable cause, as required in *Chase,* that she was violating the law prior to his encounter with defendant to justify his further interaction with and detention of defendant. Defendant's motion to suppress will be granted.

### Motion for habeas corpus relief

Defendant's motion for habeas corpus relief stems from her argument that Officer's stop of defendant's vehicle was unlawful. The exclusionary rule provides that evidence obtained as a result of an unconstitutional search or seizure cannot be used against a defendant. *Commonwealth v. Williams,* 2 A.3d 611, 619 (Pa. Super. 2010). The rule also "applies to any evidence discovered as a result of the original illegal police conduct; such evidence is termed "fruit of the poisonous tree.'" *Id.*

Having found that officer did not possess probable cause to effectuate a valid traffic stop for speeding, and that officer's interactions with defendant amounted to an improper investigative detention requiring reasonable suspicion that criminal activity was afoot, instead of a mere encounter, the evidence obtained as a result of officer's illegal conduct constitutes "fruit of the poisonous tree." defendant's motion will be granted.

Accordingly, we enter the following order.

### ORDER

And now, January 5, 2012, defendant's omnibus pretrial motion is granted.